[Cite as *State v. Brunson*, 2025-Ohio-2057.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240244 |
| | | TRIAL NO. B-2301217 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| MICHAEL BRUNSON, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed 50% to appellant and 50% to appellee.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/11/2025 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Brunson*, 2025-Ohio-2057.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240244 |
| | | TRIAL NO. B-2301217 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| MICHAEL BRUNSON, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: June 11, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** After a parking lot dispute led to a verbal encounter, defendant-appellant Michael Brunson struck V.G. in the head with a "wooden stick." Brunson argued that he acted in self-defense, but a jury found him guilty of felonious assault, and the trial court sentenced him to an indefinite term of six-to-nine years in prison. Brunson now appeals, asserting three assignments of error.

**{¶2}** We hold that Brunson's conviction for felonious assault was not against the manifest weight of the evidence and the trial court did not err to his prejudice when it imposed more than the minimum prison sentence. We therefore overrule his first and third assignments of error. But, as the parties agree, the trial court failed to provide Brunson with the required Reagan Tokes notifications, so we sustain his second assignment of error and remand the cause to the trial court for that limited purpose.

## I.    Factual and Procedural History

**{¶3}** On March 10, 2023, Brunson exited a Western Hills Walmart with a large bag of dog food in his arms. Once at his vehicle, he opened his front door to throw his phone and keys in the seat. In the tight parking lot, he misjudged how much space he had to open the door. Brunson accidentally tapped the door of the car next to him, which was owned by V.G.

**{¶4}** V.G. rolled down his window to express his dismay. Although the video of the incident does not have audio, it is clear that the verbal exchange became heated. V.G. then exited his vehicle and opened Brunson's car door, seemingly to measure if it contacted his car. Brunson immediately walked from the rear of his car and slammed shut the door that V.G. had opened. The two then continued to exchange words, and eventually, they both ended up towards the back of the parked vehicles. The

surveillance video of the incident is blurred and does not show many of their movements. However, it did show that the two continued to spar verbally, until eventually Brunson reached into the trunk of his car, grabbed an object, and hit V.G.

{¶5} As V.G. fell to the ground, Brunson got in his car and sped away. Days later, police arrested Brunson for this parking lot altercation. When the police interviewed Brunson, he claimed that he acted in self-defense, asserting that V.G. was grabbing his waistband, placing Brunson in fear that he had a weapon. In addition, Brunson contends that V.G. kept cursing and at some point called him a racial slur.

{¶6} V.G. suffered brain and head injuries from the assault, which required surgery. He continues to experience cognitive difficulties because of the incident. The State indicted Brunson on two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2). The jury acquitted Brunson on count one but found him guilty of count two. The trial court sentenced him to an indefinite prison term of six-to-nine years. He now appeals, asserting three assignments of error.

{¶7} The State concedes that the trial court failed to give the required sentencing notifications as argued in Brunson's second assignment of error, so we address his first and third assignments before dealing with the Reagan Tokes notifications that continue to vex our courts.

## II. Analysis

### A. First Assignment of Error

{¶8} In his first assignment of error, Brunson argues that his conviction for felonious assault was clearly against the manifest weight of the evidence. When reviewing the weight of the evidence, "we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st

4

Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In Ohio, "[w]hen a defendant raises a self-defense claim, once evidence is presented that tends to support that their use of force was in self-defense or in defense of another, the burden of persuasion requires the *state* to disprove at least one of the elements of self-defense beyond a reasonable doubt." (Emphasis in original.) (Cleaned up.) *State v. Shinholster*, 2024-Ohio-1606, ¶ 16 (1st Dist.), quoting *State v. Mitchell*, 2023-Ohio-2604, ¶ 16 (1st Dist.), quoting *Gibson* at ¶ 10, quoting *State v. Smith*, 2020-Ohio-4976, ¶ 49 (1st Dist.).

**{¶9}** The fact finder must determine whether the State disproved beyond a reasonable doubt that Brunson "(1) [] was not at fault in creating the situation giving rise to the affray; (2) [] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such a danger was in the use of such force, and (3) [] did not violate any duty to retreat or avoid the danger." *Smith* at ¶ 48, citing *State v. Barnes*, 2002-Ohio-68. The State only has to disprove one of the elements of self-defense to defeat Brunson's self-defense claim. Also, because R.C. 2901.09(B) provides that individuals no longer have a duty to retreat before using deadly force in self-defense, courts "need not substantively review the third element . . . [when the person] using force in self-defense . . . is in a place in which the person lawfully has a right to be." *State v. Haley*, 2024-Ohio-2303, ¶ 128 (12th Dist.).

A.

**{¶10}** Regarding whether Brunson was "at fault" in creating the situation, the State argues that, based on the video, there was no indication by body language or other behavior that V.G. was the aggressor. Instead, the State explains that the video clearly shows that Brunson was the aggressor.

{¶11} Brunson relies on our recent case, *State v. Nichols*, 2025-Ohio-1515 (1st Dist.), to support his argument that he was not the first aggressor in the parking lot altercation. As we previously held, the law ""does not require in all situations that the [defendant] must have refrained from throwing the first punch" or showing that the defendant played no part in creating the situation giving rise to the affray.'" *Id.* at ¶ 25, quoting *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.), quoting *State v. Nichols*, 2002-Ohio-415 (4th Dist. 2002). "Defendants are 'at fault' in causing the altercation if they knowingly and voluntarily enter a place or situation where a victim is located, or if they refuse to leave such a space." *Id.* at ¶ 26, citing *State v. Patterson*, 2025-Ohio-280, ¶ 41 (10th Dist.), quoting *State v. Ellis*, 2012-Ohio-3586, ¶ 15 (10th Dist.). "Defendants also may be at fault if they used force first or when their '"wrongful" behavior provoked the assault.'" *Id.*, quoting *State v. Rose*, 2024-Ohio-5689, ¶ 28 (1st Dist.), quoting *State v. Hendrickson*, 2009-Ohio-4416, ¶ 27 (4th Dist.).

{¶12} While *Nichols* is informative on who might be the initial aggressor, the facts in *Nichols* are very different than those in this case. In the *Nichols* case, video evidence corroborated the defendant's testimony that she was not the aggressor, but instead that she tried to deescalate the situation. *Id.* at ¶ 33-34. In reversing her conviction, we held that she tried to act as a "neutral peacemaker" rather than an aggressor giving rise to the affray. *Id.* Here, we have no such video evidence or any proof of Brunson trying to deescalate the situation. Both parties' tempers flared, each growing more irritated with one another, until Brunson struck V.G.

{¶13} Based on the video evidence and the testimony presented, it is still unclear who the initial aggressor was. As described above, once Brunson's car door tapped V.G.'s car, V.G. rolled down the window and began to speak to Brunson. Next, V.G. got out of his car and approached Brunson, who stood beside his own car, where

6

the two continued to exchange words. While there is no audio accompanying the video, both parties waved their arms and moved aggressively. And finally, V.G. opened Brunson's car door, prompting Brunson to walk from the back of his vehicle and slam the door shut. With these facts, it would be difficult to conclude that Brunson initiated this confrontation. Therefore, the State failed to disprove that Brunson was not at fault in creating the situation that gave rise to the affray. Indeed, this case presents a very close call as to who the aggressor was between two hostile parties, but the evidence does not tip the scale in the State's favor enough to find that *beyond a reasonable doubt* Brunson was the *initial* aggressor.

B.

{¶14} The second element of a self-defense claim is whether the defendant "had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force." *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997), citing *State v. Williford*, 49 Ohio St.3d 247, 249 (1990), citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. The analysis "is a combined subjective and objective test." *Id.* "The person's belief must be objectively reasonable under the circumstances, and he must subjectively believe he needed to resort to force to defend himself . . . ." *State v. Knipp*, 2024-Ohio-2143, ¶ 25 (5th Dist.), citing *Thomas* at 330-331. "'The objective part of the test requires consideration of "whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack," a reasonable person would believe that danger was imminent.'" *Id.*, quoting *State v. Bundy*, 2012-Ohio-3934, ¶ 54 (4th Dist.), quoting *Hendrickson*, 2009-Ohio-4416, at ¶ 30 (4th Dist.), quoting *State v. Keith*, 2008-Ohio-6122, ¶ 23 (10th Dist.), citing *Thomas* at 330. "'The subjective part requires consideration of

whether the defendant himself actually believed that he was in imminent danger.'" *Id.*, quoting *Bundy* at ¶ 54, citing *Hendrickson* at ¶ 30. This court previously held that "the trier of fact 'must consider the entire situation and determine whether the person's actions were reasonable under the circumstances.'" *In re Bumpus*, 2003-Ohio-4307, ¶ 11 (1st Dist.), quoting *State v. Napier*, 105 Ohio App.3d 713, 721 (1st Dist. 1995), citing *State v. Smith*, 10 Ohio App.3d 99 (10th Dist. 1983).

**{¶15}** In this case, Brunson's belief was neither objectively nor subjectively reasonable. The video in this case shows a heated argument that began once Brunson's car door tapped V.G.'s car. V.G. then rolled his window down to speak to Brunson, got out of the car, and the two exchanged words. Brunson, without further provocation, struck V.G. in the head. Again, although the video was soundless, based on the body language of both parties, they were clearly aggressive towards one another.

**{¶16}** Brunson testified that V.G. "reached at his waistband," but this is not supported by the video. As the two stood at the back of the vehicles, still arguing but with less erratic movements, Brunson grabbed the "wooden stick" out of the trunk and struck V.G. Even though the video is unclear, V.G. was seemingly caught off guard by the strike. He made no effort to dodge it or to block himself from being hit. Based on the video and the common parking-lot conflict presented, no reasonable person under these circumstances would have believed he was in imminent danger.

**{¶17}** Moreover, focusing on the subjective part of the test, there is very little presented that supports the idea that Brunson believed he was in imminent danger. Brunson testified that he believed V.G. had a weapon because of his actions, even though they were both being aggressive. Also, Brunson stated that "where [he came] from," if a person is pulling up his pants, that means there may be a weapon. Other than his self-serving account, there is nothing Brunson relies on to show he believed

8

he was in imminent danger.

**{¶18}** Furthermore, nothing in the video shows that V.G. reached for his waistband before being hit. Also, Brunson testified that he did not see a weapon, which aligns with V.G.'s testimony that he did not own one. In totality, Brunson merely argues that he feared that V.G. had a weapon because V.G. was being aggressive towards him, an argument contradicted by his own testimony and the video.

**{¶19}** "Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat." *State v. Helmondollar*, 2024-Ohio-2077, ¶ 47 (5th Dist.), citing *State v. Watson*, 2023-Ohio-3137, ¶ 88 (5th Dist.). This incident was a verbal altercation until Brunson abruptly struck V.G. Brunson focuses on how many times he struck V.G. to support his proposition that the degree of force used was warranted under the circumstances and proportionate to the threat he faced. However, Brunson seems to misunderstand the standard.

**{¶20}** As pointed out by the court in *Watson*, "one may use a commensurate amount of force as the circumstances require to protect oneself against an attack." *Watson* at ¶ 88, citing *Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist. 1990). The relevant inquiry focuses on the proportionality of the force used to the threat presented. In *Watson*, the defendant shot the victim when faced with verbal threats. *Id.* at ¶ 89. The court determined that the force used was disproportionate to the threat faced. *Id.* Here, while thankfully neither party had a gun, Brunson introduced a weapon into a verbal altercation. His use of the "stick" to strike V.G. in the head was disproportionate to V.G.'s use of words.

**{¶21}** Thus, the State met its burden to disprove that Brunson's use of force was objectively and subjectively reasonable under the circumstances, and his

9

conviction was not clearly against the manifest weight of the evidence. Accordingly, his first assignment of error is overruled.

### B. Third Assignment of Error

**{¶22}** In his third assignment of error, Brunson asserts that the trial court erred to his prejudice when it imposed more than the minimum prison sentence.

**{¶23}** "Under R.C. 2953.08(G)(2), we may only modify or vacate [Brunson]'s sentence if we 'clearly and convincingly find' that either (1) the record does not support the mandatory sentencing findings, or (2) that the sentence is 'otherwise contrary to law.'" *State v. White*, 2013-Ohio-4225, ¶ 11 (1st Dist.). First, Brunson's sentence fits comfortably within the statutory range for the offense, which this court has previously considered in determining that a sentence was not clearly and convincingly contrary to law. *Id.* at ¶ 13. Moreover, as both parties agree, the trial court considered (1) Brunson's criminal history, (2) the victim-impact statement, (3) the presentence investigation report, (4) Brunson's high level of disregard for the law and prior issues controlling his temper, (5) the injury/harm to the victim, and (6) that he left the victim in the parking lot knowing he was injured. These considerations support that the trial court properly considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12.

**{¶24}** Therefore, because the trial court properly considered the statutory factors in imposing more than a minimum prison term, we overrule his third assignment of error.

### C. Second Assignment of Error

**{¶25}** In Brunson's second assignment of error he contends, and the State concedes, that the trial court erred when it failed to advise him of all the Reagan Tokes notifications during his sentencing.

**{¶26}** For Reagan Tokes notifications, "'the legislature clearly placed a mandatory duty upon the trial court rather than granting it discretion.'" *State v. Greene*, 2022-Ohio-4536, ¶ 10 (1st Dist.), citing *State v. Hodgkin*, 2021-Ohio-1353, ¶ 24 (12th Dist.), quoting R.C. 2929.19(B)(2)(c). Accordingly, "'when sentencing an offender to a nonlife felony indefinite prison term under the Reagan Tokes Law, a trial court must advise the offender of the five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing to fulfill the requirements of the statute.'" *Id.*, citing *Hodgkin* at ¶ 24, quoting R.C. 2929.19(B)(2)(c).

**{¶27}** Because the trial court, as evidenced by the transcript, failed to verbally provide the notices required by R.C. 2929.19(B)(2)(c), we agree with the parties that the trial court erred, and sustain Brunson's second assignment of error.

**{¶28}** Accordingly, we remand this cause for the sole purpose of providing the required notices to Brunson.

### III. Conclusion

**{¶29}** Having sustained the second assignment of error, we remand the cause to the trial court to provide the Regan Tokes notifications to Brunson. Because Brunson's conviction was not against the manifest weight of the evidence and the trial court properly imposed a prison term greater than the minimum, we affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**KINSLEY, P.J.,** and **CROUSE, J.,** concur.